UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN PINEDA BARRIENTOS,<br><br>Petitioner,<br><br>v.<br><br>ROSEMARY NDHO, Warden,<br><br>Respondent. | No. 2:20-cv-2234-TLN-EFB P<br><br><u>ORDER AND FINDINGS AND RECOMMENDATIONS</u> |

    Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2017 convictions for violating California Penal Code § 288.7(a), sexual intercourse and sodomy of a child under 10 years of age. ECF No. 1 at 1; ECF No. 1-1 at 1. Petitioner alleges that (1) his conviction was based on insufficient evidence; (2) the trial court erroneously admitted a statement made by the victim; and (3) the prosecutor committed misconduct by misstating evidence two times. *Id.* at 5-10. For the reasons that follow, the petition must be denied.

/////
/////
/////
/////
/////

I. **Background**

The facts, as relayed by the California Court of Appeal[1], are:

In 2016, the time of crimes, Y.P. (the mother) had four children: a daughter A., age 13; a son D., age, 10; a younger son; and a two-year eight-month old daughter, the victim. The mother was single and had come from Mexico in 2005; she was undocumented. She worked in the butcher department of a grocery store and cleaning an office and a gym.

When the mother first came to Sacramento, defendant's brother William rented her a room. After about four months, she moved to a different house and William moved to an apartment with defendant. The mother cleaned William and defendant's apartment. She had a brief sexual relationship with defendant. She told a defense investigator they had sex on the sofa in defendant's apartment a day or two before the incident with the victim. On a Friday in March 2006, the mother went to clean defendant's apartment and brought her children. They stayed there all day and night. The next morning, she went to work and left the children there. She went out with William that night. When she returned after midnight, the children were asleep and they all stayed there that night. The next morning, Sunday, the mother again went to work, returning during lunch and after work. She and her children returned to their home between 7:00 and 8:00 that night.

While undressing the victim for a bath, the mother noticed blood on the child's underwear and pants. She asked the victim if someone had touched her. The victim said it was defendant; he had touched her with his finger. The mother checked the victim's body and found scratches in her rectum. The victim was scared and became more frightened as the mother asked questions and checked her body. The mother put the victim's underwear in a bag as "evidence for my child." She later gave the bag to a sheriff's deputy.

The mother asked A. and D. what had happened. At first they said nothing, but then they told her the same basic account of events they told at trial. At defendant and William's apartment D. was playing video games with his brother when he heard a loud noise and the victim crying. He went to defendant's bedroom and knocked on the door. He told defendant to open the door, but it was locked. D. banged on the door several times. Defendant said the door was unlocked, but it wasn't. A. also heard the loud bump from defendant's room; it sounded like something fell. She joined D. in banging on defendant's door. She was mad and threatened to break the door down.

A. heard defendant tell the victim to be quiet; his voice "did not sound like a normal voice." Defendant finally opened the door. The victim was crying and went to A. A. asked defendant what had happened and he said the victim fell. He "looked nervous." The victim would not tell A. what happened but cried as she does when she is hurt and would not calm down. Neither A. nor D. told their mother about this incident when she returned to the apartment.

The mother did not call the police because she was afraid her children would be taken away as she had left them with a man. The next afternoon she took the

---

[1] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

> victim to the hospital. There the police were called and a sheriff's deputy escorted them to the BEAR (Bridging Evidence Assessment and Resources) clinic for a sexual assault exam.
>
> A physician's assistant conducted the forensic exam of the victim. The victim had a bruise on her cheek. Her genital exam appeared normal but it was hard to visualize the shape of the hymen because she was squirming. There were lacerations in the rectal area that were consistent with sexual assault. The physician's assistant collected swabs from inside the victim's mouth, her vulva, two from the vestibule (immediately beyond the labia majora and below the labia minora), and two from the anal area. She also collected the underwear the victim was wearing.
>
> A criminalist analyzed the swabs and cuttings from both pairs of the victim's underwear (worn the day of the incident and the day of the exam). There was no evidence of acid phosphatase, an enzyme in high concentration in semen, on any of the samples. But a small amount of sperm was found on the vulva swab, both vestibule swabs, and one anal swab. The DNA profile of the sperm on the vestibule swabs was consistent with defendant's profile. The sperm found on the cuttings from the underwear the victim wore the day of the incident was also consistent with defendant's profile. The criminalist could not develop a full DNA profile for the sperm on the anal swab.
>
> Dr. Angela Vickers, a pediatrician specializing in child abuse and neglect, testified as an expert. She testified there are usually no injuries to a child when the penetration does not enter the vaginal canal. Most sexually abused children have normal exams. She explained, "When children are sexually abused and describe in their — you know, simple words, developmentally appropriate, that something touched their genitals, whether it was a penis or a finger, even if they are to describe it, it may not go all the way into the vaginal canal. It may actually be within the labia minora or perhaps just touching up against the hymen, and none of those structures would really be injured significantly by pushing up against or touching." She also explained that young children are poor historians and do not distinguish between genitals and anus but use one word for "everything down in that area."
>
> Dr. Vickers found the anal lacerations, which were fresh, having been made within a few days, were consistent with penile penetration. The vestibule swabs with sperm were indicative of penile penetration.

*People v. Barrientos*, No. C087480, 2019 Cal. App. Unpub. LEXIS 6235, at *1-6 (Sep. 19, 2019); ECF No. 1-1 at 3-6; ECF No. 12-8 at 2-5.

Petitioner's appeal of his conviction was rejected by the state appellate court. ECF No. 1-1 at 6-17. The California Supreme Court denied review. ECF No. 1 at 2. Petitioner then filed a habeas petition in the state high court, which was summarily denied and left the Court of Appeal's opinion as the last reasoned state court opinion on most of petitioner's claims.[2] *Id.*

---

[2] Petitioner includes one claim in his habeas petition that he did not present on direct

**II. Analysis**

**A. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, __ U.S. __, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)).

---

appeal – that the prosecutor committed misconduct "when he told the jury that [the victim] was in the room [with petitioner] over 20 minutes." ECF No. 1 at 10.

4

Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id*. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

/////

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, the court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no

reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### B. Petitioner's Claims

Petitioner asserts four claims in this petition, which the court will analyze in turn. First, petitioner claims that his conviction was supported by insufficient evidence. The California Court of Appeal rejected this claim in the last reasoned state court opinion on the matter as follows:

> Defendant contends there is insufficient evidence to sustain the convictions because there is no evidence of penile penetration. He contends the prosecution's case was based on inferences that are not supported by the evidence and suggests alternative explanations for the evidence at trial. He contends the small amount of sperm found does not prove penile penetration because sperm is hardy, the mother had sexual relations with defendant on the sofa shortly before the alleged incident, and the sperm could have transferred from her to the victim. He discounts Dr. Vickers's testimony as biased because she always found examinations consistent with allegations of sexual abuse regardless of whether there were any injuries.
>
> "'The standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] '"[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.'" [Citation.] "The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] 'Although it is the duty of the [finder of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [finder of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.'" [Citation.]
>
> "'An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.' [Citation.] 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1572, 43 Cal. Rptr. 3d 741.)
>
> The jury heard evidence that defendant and the victim were in his bedroom behind a locked door, and he took some time to open the door despite the victim's siblings pounding on it and demanding that he open it. Defendant told the victim to be quiet in an abnormal voice. When defendant did open the door, the victim

was crying and ran to her big sister for comfort. Defendant looked nervous and said he did not do anything. The reasonable inference from these suspicious circumstances is that something happened to the victim other than defendant's explanation of a fall.

Further, there was substantial evidence that what happened was sexual intercourse and sodomy.

"The elements of sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a)) are: (1) The defendant engaged in a act of sexual intercourse or sodomy with the victim; (2) when the defendant did so, the victim was 10 years of age or younger; and (3) at the time of the act, the defendant was at least 18 years old." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79, 191 Cal. Rptr. 3d 905.) Sexual intercourse under section 288.7 requires penetration of only the labia majora, not the vagina. (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097, 141 Cal. Rptr. 3d 193.) Similarly, sodomy requires only slight penetration. (*Mendoza*, at p. 79.)

The jury heard that sperm, matching defendant's DNA profile, was found on the vulva swab and both vestibule swabs from the victim, as well as on her underwear. The vestibule is located behind the labia majora, indicating the sufficient penetration. Dr. Vickers, the expert, opined this presence of sperm was consistent with penile penetration. Although there was no evidence of any injury to the victim's genitalia, Vickers testified there is usually no injury if the penetration is not into the vaginal canal. In fact, she testified, the majority of sexually abused children have no physical findings of injury and their injuries heal quickly. Defendant contends an inference of genital penetration is not reasonable because the victim did not report any contact with her genitalia. Vickers explained that young children do not distinguish between their genitalia and anus, often using the same word to describe both. This was substantial evidence of sexual intercourse.

Defendant attacks Vickers's testimony as biased. Whether her testimony was credible was a decision for the jury. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403, 133 Cal. Rptr. 2d 561, 68 P.3d 1.)

Defendant's contention that the sperm may have been transferred from the mother to the victim is only speculation. The jury heard no evidence on the likelihood of transfer. Although there was some evidence that the mother had sex with defendant on a sofa one to two days before the locked door incident, there was no evidence that any sperm was left on the sofa or as to how it possibly could have been transferred to the victim's underwear and genitalia.

There was also substantial evidence of sodomy. The victim was two and had sperm in her anus. While the source of the sperm on the anal swab could not be identified, the reasonable inference is that its source was the same as the other sperm found on the victim and her underwear. Further, the victim had lacerations in the rectal area that were consistent with sexual assault and penile penetration. The lacerations were made within a few days of the examination.

> Defendant points out that the victim described assault by only a finger and contends "It is not reasonable to assume that what she was describing as a finger was in fact his penis . . . ." We disagree. First, there was no evidence the young victim knew what a penis was. Further, the lack of precision by a very young child in describing events during a sexual assault is understandable and was confirmed by the expert testimony. Finally, the nature of the act of molestation was a question for the jury and substantial evidence supports the jury's conclusion that it was sodomy.

*People v. Barrientos*, No. C087480, 2019 Cal. App. Unpub. LEXIS 6235, at *6-11 (Sep. 19, 2019).

The state court analysis was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Under the federal constitutional guarantee of due process, a criminal conviction must be supported by sufficient evidence for the jury to find a defendant guilty beyond a reasonable doubt. *Musacchio v. United States*, 577 U.S. 237, 136 S. Ct. 709, 715 (2016). A court reviewing a conviction for sufficiency of the evidence analyzes whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Id.* The reviewing court does not "intrude on the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (internal quotation marks omitted). The state courts' rejection of petitioner's sufficiency of the evidence claim did not run contrary to or unreasonably apply these standards.

Second, petitioner contends that the trial court violated his Confrontation Clause rights when it admitted into evidence the victim's statement to her mother that petitioner had hurt her with his finger. In rejecting this claim, the state appellate court reasoned:

> Defendant contends the trial court erred in admitting the victim's statement that defendant hurt her with his finger. He contends . . . admission of the statement violated his confrontation rights.
>
> A. Background
> The People moved to admit the victim's statement to her mother "Edwin hurt me with his finger" on several grounds. . . .
>
> In an in limine motion, defendant objected to the admission of any statement by the victim as a violation of his confrontation rights unless she testified.
>
> The trial court ruled the statement was admissible.

\* \* \*

D. Confrontation

Defendant contends admission of the victim's hearsay statement violated his confrontation rights because the victim did not testify. He contends the statement was testimonial because the mother was conducting an investigation as to who had abused her daughter, keeping her underwear as "evidence for my child." Because the error was of constitutional magnitude, the test for prejudice is the beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705.

In *Crawford*, the United States Supreme Court explained, "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." (*Crawford v. Washington, supra*, 541 U.S. at p. 50.) With this focus in mind, the court held that the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (Id. at pp. 53-54.) Testimonial statements include testimony at a preliminary hearing or grand jury, statements during police interrogations, and other statements that a reasonable person would believe could be used at a future trial. (Id. at p. 52.) To be testimonial, a statement must be made in purpose and form similar to testimony at trial, under circumstances with a degree of formality and solemnity characteristic of testimony, and be given and taken to establish or prove some past fact for possible use in a criminal trial. (*People v. Cage* (2007) 40 Cal.4th 965, 984, 56 Cal. Rptr. 3d 789, 155 P.3d 205.) The key question is whether the statement is "procured with a primary purpose of creating an out-of-court substitute for trial testimony." (*Michigan v. Bryant* (2011) 562 U.S. 344, 358, 131 S. Ct. 1143, 179 L. Ed. 2d 93.)

The victim's statement to her mother was not testimonial. It was not taken for the primary purpose to establish a fact for use at trial. Instead, the mother sought an explanation for the blood on her child's underwear. The statement was not comparable to those in a court hearing or structured police interview because there was no formality or solemnity. It was a casual conversation while a mother was undressing a young child for a bath. Tellingly, the mother did not then call the police. Instead, she waited until the next afternoon to take the victim to the hospital. It was only then that the police were contacted.

Because there was no violation of defendant's confrontation rights, the *Chapman* harmless error test does not apply.

*People v. Barrientos,* No. C087480, 2019 Cal. App. Unpub. LEXIS 6235, at *11-19 (Sep. 19, 2019).

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." As the state court correctly stated, the clause is concerned only with testimonial statements. *Michigan v. Bryant*, 562 U.S. 344, 352-54 (2011). While the contours of the term "testimonial" are not precisely defined, "the most important instances in which the Clause restricts the introduction of

10

1   out-of-court statements are those in which state actors are involved in a formal, out-of-court

2   interrogation of a witness to obtain evidence for trial." *Id.* at 358.  The state courts' conclusion

3   that the victim's statement was not testimonial, and thus not subject to the Confrontation Clause,

4   was not contrary to, nor an unreasonable application of, these principles.

5         Third, petitioner argues that the prosecutor committed misconduct when he stated that the

6   prosecution expert, Dr. Vickers, had testified that a child the age of the victim "would not

7   necessarily know the difference between a penis and a finger."  According to petitioner, Dr.

8   Vickers testified that a young child would not be able to tell how far someone had entered her

9   vagina and whether it was penetrated with a penis or finger.  In rejecting this claim, the state

10  appellate court reasoned:

> Defendant contends the prosecutor committed misconduct by misstating the evidence. He notes the prosecutor argued Dr. Vickers testified a child of the victim's age would not be able to distinguish between a finger and a penis, when the doctor actually testified a young child would not distinguish between her genitals and her anus and could not tell how deep the penetration was and whether by a finger or penis. Defendant contends this contention should not be forfeited despite the failure to object because such failure was ineffective assistance of counsel. He argues the prosecutor's error, providing unsworn expert testimony, violated his constitutional rights by usurping the function of the jury and requires reversal.
>
> During closing argument, the prosecutor said Dr. Vickers "told you that children of [the victim's] age really don't know the difference between their anus and their genitals. It's all kind of one position. They don't know the difference between a finger and a penis." "Dr. Vickers says age-appropriate conduct [sic] is she would not necessarily know the difference between a finger and a penis." Defendant contends this argument was a prejudicial misstatement of Vickers' actual testimony. "When children are sexually abused and describe in their — you know, simple words, developmentally appropriate, that something touched their genitals, whether it was a penis or a finger, even if they are to describe it, it may not go all the way into the vaginal canal."
>
> "'It is settled that a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.'" (*People v. Wharton* (1991) 53 Cal.3d 522, 567, 280 Cal. Rptr. 631, 809 P.2d 290.)
>
> We find no misconduct. The prosecutor's argument was a fair comment on Dr. Vickers's testimony that very young children are poor historians and cannot accurately describe sexual assault because their simple language fails to make certain distinctions. Although the prosecutor did briefly note in argument that there was no evidence that the victim knew the difference between a penis and a

>finger, rather than qualifying that the expert had said children could not necessarily distinguish between a penis and finger touching their genital and anal areas, this deviation was minor. Even if the prosecutor did misstate the evidence, the error was not """so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process""" and so violate the federal constitution. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214, 40 Cal. Rptr. 2d 456, 892 P.2d 1199.) Nor was it misconduct under state law because it did not involve """the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.""" (*People v. Espinoza* (1992) 3 Cal.4th 806, 820, 12 Cal. Rptr. 2d 682, 838 P.2d 204.)

*People v. Barrientos*, No. C087480, 2019 Cal. App. Unpub. LEXIS 6235, at *20-22 (Sep. 19, 2019).

This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law. Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974); *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996). The court considers the alleged misconduct in light of the entire trial, and relief will be granted only if the misconduct by itself infected the trial with unfairness. *Donnelly*, 416 U.S. at 639-43. In this case, it is a stretch to consider the prosecutor's statement to be erroneous, much less misconduct, and the state court's conclusion that it did not infect the trial with unfairness was not unreasonable or contrary to federal law.

Lastly, petitioner argues that the prosecutor committed misconduct when "he told the jury that [the victim] was in the room over 20 minutes." ECF No. 1 at 10. Petitioner did not include this claim in his direct appeal but states on his federal petition that he raised it in his habeas petition to the California Supreme Court. ECF No. 1 at 10. He appended the state habeas petition to his federal petition as Exhibit 7. ECF No. 1 at 390-405. The court does not find the claim within that document. Accordingly, the claim appears unexhausted. 28 U.S.C. § 2254(b).

When an applicant for a writ of habeas corpus fails to exhaust his state remedies on a claim presented in a federal petition, the remedy is normally to dismiss the claim without prejudice or stay the case while the petitioner presents the unexhausted claim to the state high court. *See generally King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009). However, while a federal court may not

/////

grant an unexhausted claim on the merits, it has discretion to *deny* an unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2); *Runningeagle v. Ryan*, 686 F.3d 758, 778 n.10 (9th Cir. 2012).

The court should exercise that discretion here, where the record reveals no reference by the prosecutor to twenty minutes spent by the victim in petitioner's room. See ECF No. 1 at 182-97, 224-32 (reporter's transcript of the prosecutor's closing arguments). In fact, review of the closing arguments reveals only a single vague reference to that period of time: "And *some period of time elapses* where [the victim's older sister] can hear [the victim] inside [the room with petitioner]." ECF No. 1 at 184 (emphasis added). As petitioner's claim lacks the factual basis on which it is premised, it cannot support habeas relief.

### III. Motions for Evidentiary Hearing and Appointment of Counsel

With his traverse, petitioner has filed motions for an evidentiary hearing and for appointment of counsel. There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). The court may appoint counsel at any stage of the proceedings "if the interests of justice so require." *See* 18 U.S.C. § 3006A; *see also*, Rule 8(c), Rules Governing § 2254 Cases. The court does not find that the interests of justice would be served by the appointment of counsel.

Having determined that petition does not state a successful habeas claim, the court finds that an evidentiary hearing is unnecessary. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

The court notes that petitioner includes facts and claims in his traverse and motion for evidentiary hearing that were not included in his petition. *E.g.*, ECF No 18 (arguing for the first time that: (1) the state appellate court "incorrectly applied the Watson standard of review", (2) the prosecution used "false evidence" to convict petitioner, (3) Dr. Vickers falsely testified that abuse victims usually do not have injuries to their genitals or anus, (4) the trial court erroneously excluded evidence that the victim had an infection in her anus in the days before her exam which caused her to scratch and create the injuries found by the examiner, and (5) trial counsel rendered ineffective assistance by failing to call a witness to testify "how semen can be transferred from

one place to another" and for failing to call petitioner's brother to testify that the door behind which the abuse took place had no locking mechanism).  Petitioner has not sought to amend the petition to include these claims, he has not presented the evidence and argument supporting the claims, and, most importantly, respondent has had no opportunity to address them.  The court will not address these claims, as they are not properly presented in either the traverse or the evidentiary hearing motion.  *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) ("Delgadillo argues for the first time in his reply brief that he was prejudiced by counsel's failure to object to the admission of hearsay testimony . . . [a]rguments raised for the first time in petitioner's reply brief are deemed waived."); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").

## IV.  Order and Recommendation

For the reasons stated above, it is hereby ORDERED that petitioner's motions for appointment of counsel and evidentiary hearing (ECF Nos. 18 and 19) are DENIED.  It is further RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  August 5, 2021.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE