UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWIN PINEDA BARRIENTOS,

Petitioner,

v.

ROSEMARY NDHO, Warden,

Respondent.

No. 2:20-cv-02234-TLN-EFB (HC)

ORDER AND FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2017 convictions for violating California Penal Code § 288.7(a), sexual intercourse and sodomy of a child under 10 years of age. ECF No. 1 at 1; ECF No. 1-1 at 1. In his original petition, petitioner alleged that (1) his conviction was based on insufficient evidence; (2) the trial court erroneously admitted a statement made by the victim; and (3) the prosecutor committed misconduct by misstating evidence two times. *Id.* at 5-10. Petitioner seeks to amend the petition to add additional claims and to stay the petition while he exhausts certain claims in the California Supreme Court. ECF Nos. 36, 37, 41. Respondent opposes both requests. ECF No. 38. For the reasons that follow, the court finds that the motion to stay is moot, but that the motion for leave to file an amended petition should be granted in part.

////

////

////

## I. Background

The facts, as relayed by the California Court of Appeal[1], are:

In 2016, the time of crimes, Y.P. (the mother) had four children: a daughter A., age 13; a son D., age, 10; a younger son; and a two-year eight-month old daughter, the victim. The mother was single and had come from Mexico in 2005; she was undocumented. She worked in the butcher department of a grocery store and cleaning an office and a gym.

When the mother first came to Sacramento, defendant's brother William rented her a room. After about four months, she moved to a different house and William moved to an apartment with defendant. The mother cleaned William and defendant's apartment. She had a brief sexual relationship with defendant. She told a defense investigator they had sex on the sofa in defendant's apartment a day or two before the incident with the victim. On a Friday in March 2006, the mother went to clean defendant's apartment and brought her children. They stayed there all day and night. The next morning, she went to work and left the children there. She went out with William that night. When she returned after midnight, the children were asleep and they all stayed there that night. The next morning, Sunday, the mother again went to work, returning during lunch and after work. She and her children returned to their home between 7:00 and 8:00 that night.

While undressing the victim for a bath, the mother noticed blood on the child's underwear and pants. She asked the victim if someone had touched her. The victim said it was defendant; he had touched her with his finger. The mother checked the victim's body and found scratches in her rectum. The victim was scared and became more frightened as the mother asked questions and checked her body. The mother put the victim's underwear in a bag as "evidence for my child." She later gave the bag to a sheriff's deputy.

The mother asked A. and D. what had happened. At first they said nothing, but then they told her the same basic account of events they told at trial. At defendant and William's apartment D. was playing video games with his brother when he heard a loud noise and the victim crying. He went to defendant's bedroom and knocked on the door. He told defendant to open the door, but it was locked. D. banged on the door several times. Defendant said the door was unlocked, but it wasn't. A. also heard the loud bump from defendant's room; it sounded like something fell. She joined D. in banging on defendant's door. She was mad and threatened to break the door down.

A. heard defendant tell the victim to be quiet; his voice "did not sound like a normal voice." Defendant finally opened the door. The victim was crying and went to A. A. asked defendant what had happened and he said the victim fell. He "looked nervous." The victim would not tell A. what happened but cried as she does when she is hurt and would not calm down. Neither A. nor D. told their mother about this incident when she returned to the apartment.

The mother did not call the police because she was afraid her children would be taken away as she had left them with a man. The next afternoon she took the

[1] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

> victim to the hospital. There the police were called and a sheriff's deputy escorted them to the BEAR (Bridging Evidence Assessment and Resources) clinic for a sexual assault exam.
>
> A physician's assistant conducted the forensic exam of the victim. The victim had a bruise on her cheek. Her genital exam appeared normal but it was hard to visualize the shape of the hymen because she was squirming. There were lacerations in the rectal area that were consistent with sexual assault. The physician's assistant collected swabs from inside the victim's mouth, her vulva, two from the vestibule (immediately beyond the labia majora and below the labia minora), and two from the anal area. She also collected the underwear the victim was wearing.
>
> A criminalist analyzed the swabs and cuttings from both pairs of the victim's underwear (worn the day of the incident and the day of the exam). There was no evidence of acid phosphatase, an enzyme in high concentration in semen, on any of the samples. But a small amount of sperm was found on the vulva swab, both vestibule swabs, and one anal swab. The DNA profile of the sperm on the vestibule swabs was consistent with defendant's profile. The sperm found on the cuttings from the underwear the victim wore the day of the incident was also consistent with defendant's profile. The criminalist could not develop a full DNA profile for the sperm on the anal swab.
>
> Dr. Angela Vickers, a pediatrician specializing in child abuse and neglect, testified as an expert. She testified there are usually no injuries to a child when the penetration does not enter the vaginal canal. Most sexually abused children have normal exams. She explained, "When children are sexually abused and describe in their — you know, simple words, developmentally appropriate, that something touched their genitals, whether it was a penis or a finger, even if they are to describe it, it may not go all the way into the vaginal canal. It may actually be within the labia minora or perhaps just touching up against the hymen, and none of those structures would really be injured significantly by pushing up against or touching." She also explained that young children are poor historians and do not distinguish between genitals and anus but use one word for "everything down in that area."
>
> Dr. Vickers found the anal lacerations, which were fresh, having been made within a few days, were consistent with penile penetration. The vestibule swabs with sperm were indicative of penile penetration.

*People v. Barrientos*, No. C087480, 2019 Cal. App. Unpub. LEXIS 6235, at *1-6 (Sep. 19, 2019); ECF No. 1-1 at 3-6; ECF No. 12-8 at 2-5.

Petitioner's appeal of his conviction was rejected by the state appellate court. ECF No. 1-1 at 6-17. The California Supreme Court denied review. ECF No. 1 at 2. Petitioner then filed a habeas petition in the state high court, which was summarily denied and left the Court of Appeal's opinion as the last reasoned state court opinion on most of petitioner's claims. *Id.*

Petitioner filed the instant petition on November 9, 2020. *Id.* On August 4, 2021, this court recommended that the petition be denied. ECF No. 20. However, while that

recommendation was pending, petitioner filed a motion to amend the petition and a motion to stay the court's consideration of the petition pending his exhaustion of certain claims in the California Supreme Court. ECF Nos. 24, 25. Respondent filed a brief opposition to the motions. ECF No. 26. Finding the briefing provided by the parties on the issues of stay and amendment insufficient, the court held the August 4, 2021 recommendation in abeyance to allow further briefing. ECF No. 28. The parties have filed that briefing. ECF Nos. 36-38, 41, 42.

**II. Miscellaneous Motions Filed by Petitioner**

Petitioner has also filed motions for: (1) an extension of time to file an amended petition (ECF No. 31); (2) a certificate of appealability (ECF No. 33); (3) appointment of counsel (ECF No. 34); and (4) a motion for an evidentiary hearing on the issue of whether petitioner's proffered new claims relate back to the claims he asserted in the original petition (ECF No. 35).

As petitioner has filed an amended petition, the motion for an extension of time to do so will be denied as moot.

A court may issue a certificate of appealability following the issuance of a final order where a habeas applicant has made "a substantial showing of the denial of a constitutional right" with respect to each issue he wishes to raise on appeal. 28 U.S.C. § 2253(c). As a final order has not issued in this case, a certificate of appealability is not proper at this time.

There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). The court may appoint counsel at any stage of the proceedings "if the interests of justice so require." *See* 18 U.S.C. § 3006A; *see also*, Rule 8(c), Rules Governing § 2254 Cases. The court does not find that the interests of justice would be served by the appointment of counsel.

Petitioner requests an evidentiary hearing on the issue of relation back but does not explain why he believes such a hearing is necessary. Petitioner identifies no evidence or witness testimony relevant to that issue. Accordingly, the motion for evidentiary hearing will be denied.

////

////

////

**III. The Motion to Amend**

Determining what claims petitioner wishes to add to the petition via amendment has presented the court with a minor challenge. In his motion to stay, filed three days before his motion to amend (which identifies no new claims), petitioner identified three claims of ineffective assistance of trial counsel and four claims of prosecutorial misconduct. The court will label the claims as follows:

(1) that trial counsel rendered ineffective assistance by

(a) failing to call petitioner's brother to testify regarding whether the bedroom door had a lock ("IAC I"),

(b) failing to call an expert on semen transfer ("IAC II"), and

(c) failing to object to unspecified statements made by the prosecutor ("IAC III"); and

(2) that the prosecutor committed misconduct by

(a) telling the jury that the bedroom door was closed for 20 minutes ("PM I"),

(b) coercing the victim's sister into testifying on unspecified matters ("PM II"),

(c) introducing unspecified false statements into evidence ("PM III"), and

(d) telling the jury that the bedroom door was locked ("PM IV"). ECF No. 36.

A review of the original complaint, which included a copy of petitioner's habeas brief to the California Supreme Court, reveals that IAC I and IAC II were exhausted in that court but that none of the remaining claims were (with the possible exception of PM III, see next paragraph). ECF No. 1 at 48-110.

However, after filing the motions to stay and amend, and after respondent filed an opposition to those motions, petitioner filed a proposed amended petition that contains only IAC I, IAC II, and a claim that the prosecutor knowingly presented false testimony from expert Vickers that "victims of sexual abuse normally don't have injuries to the genital area or anus[.]" ECF No. 41 at 2-10 (filed June 21, 2022). This new claim, which is perhaps a more fully described version of PM III (and will therefore be referred to as "PM III+"), was included in the petition to the California Supreme Court and is therefore exhausted. ECF No. 1 at 101-08.

Because the proposed amended petition, were it to be accepted by the court, would become the operative pleading in this case, the court will consider only the claims included therein (IAC I, IAC II, and PM III+) in determining whether to allow amendment. The court notes again that each of these claims has been exhausted in the state high court.

Federal Rule of Civil Procedure 15, which applies in habeas proceedings (*Ross v. Williams*, 950 F.3d 1160, 1166 (9th Cir. 2020) (*en banc*)), allows a party to amend a pleading only with the opposing party's consent or the leave of court where, as here, more than 21 days have elapsed after the service of a responsive pleading. Fed. R. Civ. P. 15(b). "The court should freely give leave when justice so requires." *Id.* The court may deny leave to amend, however, where such amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Respondent argues that amendment would be futile because the new claims were all asserted after the one-year limitations period provided by 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1), a one-year limitations period for seeking federal habeas relief begins to run from the latest of: (1) the date the judgment became final on direct review or the expiration of the time for seeking such review (or April 25, 1996, if the judgment became final prior to AEDPA's enactment), (2) the date on which a state-created impediment to filing is removed, (3) the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review, or (4) the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. That limitations period may be tolled in certain circumstances; relevant here, during the pendency of a state habeas petition. 28 U.S.C. § 2244(d)(2).

According to respondent, and undisputed by petitioner, the judgment on petitioner's criminal conviction became final on May 16, 2020 (150 days after the California Supreme Court denied review on December 18, 2019 (ECF No. 13-9)). ECF No. 38 at 2. On that date, petitioner's state habeas petition was pending in the California Supreme Court, thereby tolling the federal limitations period until the court denied it on June 24, 2020. ECF No. 13-10. The limitations period began running the following day and expired on June 24, 2021. (Petitioner has

/////

not advanced any other justifications for tolling.) Petitioner did not seek to add additional claims to the petition until October 4, 2021. ECF No. 24 (petitioner's first motion to amend).

However, Rule 15 provides that amendments made after a limitations period has run may "relate back" to the date of the original pleading where the new claims arise "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1). Petitioner argues that his new claims relate back to the claims he set out, or tried to set out, in the original petition and that they are therefore timely.

A claim in an amended petition does not "relate back" to the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The entirety of a trial or sentence is too broad to constitute the "conduct, transaction, or occurrence" referred to by Rule 15. *Id.* at 656-57, 661. Rather, a new claim must be "tied to a common core of operative facts" as an existing claim in order to relate back under the rule. *Id.* at 664.

Where the original petition relied on an appended written instrument to help set forth the factual bases for its claims, the Ninth Circuit has instructed courts to undertake a two-step analysis to determine whether a proposed amended petition relates back. *Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020). First, the court must "determine what claims the amended petition alleges and what core facts underlie those claims." *Id.* Second, the court must compare each claim in the amended petition to the original petition and its exhibits to see whether the original petition set out, or attempted to set out, "a corresponding factual episode." *Id.* "If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back." *Id.* at 1168.

Here, petitioner set out his claims in the original petition as follows (*sic* all):

> *Ground One*. The prosecutor presented conflicting evidence, as such some of the statements regarding key events will be told from different perspectives presented at trial, in violation of *Crawford* and *Brady*. Trial court erred when it allow statements by Mia [the victim]. Petitioner's conviction is unconstitutional because it was supported by insufficient evidence. Please see Exhibit Opening Brief.

***

> *Ground Two*. The trial court erred allowing admission as a spontaneous statement of Mia's statements about how she was hurt required reversal of the conviction. Admission of Mia's statement violates petitioner's right to confrontation under the Harmless Beyond a Reasonable Doubt Standard and deprived petitioner's due process of law Sixth, 14th amendments.

***

> *Ground Three*. The prosecutor committed misconduct when he falsely asserted that according to its expert witness medical doctor and child abuse expert Dr. Vickers, children Mia's age could not distinguish between a finger and a penis. This statements prejudice petitioner. They were inflammatory to the jury and petitioner did not receive a fair trial.

***

> *Ground Four*. Prosecutor use of false statements in violation of *Napue v. Illinois* when he told the jury that Mia was in the room over 20 minutes, when the witness never said this [illegible] states that about five minutes, and when her expert did not review any prior medical record because Mia had an infection in her anus. Please see Exhibit # [blank].

ECF No. 1 at 5, 7, 8, 10.

In addition, petitioner appended his opening brief on direct appeal to the Third District Court of Appeal (ECF No. 1 at 17-97) as well as his habeas petition to the California Supreme Court (*id.* at 99-114, exhibits at 115 *et seq.*).

A comparison of these initial grounds for relief with those asserted in the proposed amended petition reveals that petitioner made no claims in the original petition that share a common core of operative facts with the first two claims now asserted (IAC I and IAC II). There is no claim in the original petition that could be construed as having a shared core of operative facts with IAC I (that trial counsel was ineffective for failing to call petitioner's brother to testify that the bedroom door did not have a lock) or IAC II (that trial counsel was ineffective for failing to call an expert on semen transfer). Therefore, any amendment to add those claims would be futile and leave to amend to add those claims must be denied.

However, a close reading of the original petition reveals that petitioner attempted to argue there that the prosecutor committed misconduct by eliciting testimony from Dr. Vickers that abuse victims do not normally have injuries to their genitalia. It is petitioner's contention (in claim PM III+) that it was wrong to present this testimony from Dr. Vickers because Dr. Vickers

had not reviewed the victim's medical history and such a review would have shown that the victim's injuries were caused by a medical condition and not abuse by petitioner. Petitioner attempted to set this claim out in ground four of the original petition (arguing that the prosecutor committed misconduct "when her expert did not review any prior medical record because Mia had an infection in her anus"). ECF No. 1 at 10. While the claim was not sufficiently articulated in the original petition to make sense, petitioner did append his habeas brief to the California Supreme Court in which he articulated the claim more fully. ECF No. 1 at 101 ("Petitioner was prejudiced by the false testimony given at trial by the expert Dr. Vickers when she told the jury that victims of sexual abuse normally don't have injuries to the genital area or anus. This case is very similar as *In re Figueroa*, because in that case Figueroa was convicted by use of false evidence that was introduced at trial by the experts, as in this case petitioner Barrientos was convicted by the use of expert testimony, in this case as in *Figueroa* the experts did not review any prior medical records of the victim[.]). Under the Ninth Circuit's decision in *Ross*, this attempt provides a basis for PM III+ to relate back to the original petition, and the claim is therefore timely.

**IV. The Motion to Stay**

Because the proposed amended complaint filed by petitioner contains only exhausted claims, his request that the court stay the petition under *Rhines v. Weber*, 544 U.S. 269, 277 (2005) is moot and should be denied.

**V. Current Status**

As there is no reason to continue to hold the August 4, 2021 findings and recommendations (ECF No. 20) in abeyance, the court will submit them to the District Judge along with the recommendation contained herein. Should the District Judge adopt the earlier recommendations and the instant recommendation, this case will proceed on petitioner's claim of prosecutorial misconduct regarding expert Vickers's testimony (PM III+).

**VI. Order and Recommendation**

For the reasons stated above, it is hereby ORDERED that:

1. Petitioner's March 17, 2022 motion for extension of time (ECF No. 31) is DENIED;

2. Petitioner's March 18, 2022 motion for a certificate of appealability (ECF No. 33) is DENIED;

3. Petitioner's March 18, 2022 motion for appointment of counsel (ECF No. 34) is DENIED;

4. Petitioner's March 18, 2022 motion for an evidentiary hearing (ECF No. 35) is DENIED; and

5. The court's December 9, 2021 order (ECF No. 28) – holding the August 8, 2021 recommendations in abeyance (ECF No. 20) – is lifted and the recommendations are submitted to the District Judge.

Further, it is RECOMMENDED that:

1. Petitioner's March 18, 2022 motion to stay (ECF No. 36) be DENIED; and

2. Petitioner's March 21, 2022 motion for leave to file an amended petition (ECF No. 37) be denied as to the first two proposed new claims (IAC I and IAC II), but granted as to petitioner's proposed new claim PM III+ (that the prosecutor committed misconduct by knowingly presenting false testimony from expert Vickers regarding injuries generally sustained by victims of sexual abuse);

3. That the case proceed on claim PM III+ only; and

4. That respondent be directed to file a response to claim PM III+ set out in the amended petition.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing §

2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 12, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE