UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN PINEDA BARRIENTOS,<br><br>Plaintiff,<br><br>v.<br><br>ROSEMARY NDOH,<br><br>Defendant. | No. 2:20-cv-02234-DJC-EFB (HC)<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel in this petition for a writ of habeas corpus. 28 U.S.C. § 2254. He challenges his 2017 convictions for violating California Penal Code § 288.7, sexual intercourse and sodomy of a child under 10 years of age. ECF No. 1 at 1; ECF No. 1-1 at 1. The claim that proceeds in petitioner's second amended petition he has identified as claim PM III+. ECF No. 41, 43, 47. Respondent has filed her response to that claim and petitioner has filed his reply. ECF Nos. 48, 52. For the reasons that follow, the petition must be denied.

**I.   Background**

The procedural history of this case is described in the court's September 12, 2022 order and findings and recommendations. ECF No. 43. To summarize, petitioner's criminal conviction became final on May 16, 2020. ECF No. 38 at 2. His state habeas petition was denied by the California Supreme Court on June 24, 2020. ECF No. 13-10. Petitioner was allowed to amend

his habeas petition to this court more than one year after the California Supreme Court's state habeas denial, because the claims in his amended federal habeas petition relate back to his original petition according to the two-step analysis in *Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020).[1]

The court restates the facts of petitioner's criminal case, as relayed by the California Court of Appeal:[2]

> In 2016, the time of crimes, Y.P. (the mother) had four children: a daughter A., age 13; a son D., age, 10; a younger son; and a two-year eight-month old daughter, the victim. The mother was single and had come from Mexico in 2005; she was undocumented. She worked in the butcher department of a grocery store and cleaning an office and a gym.
>
> When the mother first came to Sacramento, defendant's brother William rented her a room. After about four months, she moved to a different house and William moved to an apartment with defendant. The mother cleaned William and defendant's apartment. She had a brief sexual relationship with defendant. She told a defense investigator they had sex on the sofa in defendant's apartment a day or two before the incident with the victim. On a Friday in March 2006, the mother went to clean defendant's apartment and brought her children. They stayed there all day and night. The next morning, she went to work and left the children there. She went out with William that night. When she returned after midnight, the children were asleep and they all stayed there that night. The next morning, Sunday, the mother again went to work, returning during lunch and after work. She and her children returned to their home between 7:00 and 8:00 that night.
>
> While undressing the victim for a bath, the mother noticed blood on the child's underwear and pants. She asked the victim if someone had touched her. The victim said it was defendant; he had touched her with his finger. The mother checked the victim's body and found scratches in her rectum. The victim was scared and became more frightened as the mother asked questions and checked her body. The mother put the victim's underwear in a bag as "evidence for my child." She later gave the bag to a sheriff's deputy.
>
> The mother asked A. and D. what had happened. At first they said nothing, but then they told her the same basic account of events they told at trial. At defendant and William's apartment D. was playing video games with his brother when he heard a loud noise and the victim crying. He went to defendant's bedroom and knocked on the door. He told defendant to open the door, but it was locked. D. banged on the door several times. Defendant said the door was unlocked, but it wasn't. A. also heard the loud bump from defendant's room; it sounded like

---

[1] On October 30, 2023, petitioner filed an appeal of the order that allowed claim PM III+ to proceed but dismissed his other claims. ECF No. 54 (appealing ECF No. 53). The Ninth Circuit has dismissed petitioner's appeal for lack of jurisdiction because the order petitioner sought to challenge is not final or appealable. ECF No. 57.

[2] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

something fell. She joined D. in banging on defendant's door. She was mad and threatened to break the door down.

A. heard defendant tell the victim to be quiet; his voice "did not sound like a normal voice." Defendant finally opened the door. The victim was crying and went to A. A. asked defendant what had happened and he said the victim fell. He "looked nervous." The victim would not tell A. what happened but cried as she does when she is hurt and would not calm down. Neither A. nor D. told their mother about this incident when she returned to the apartment.

The mother did not call the police because she was afraid her children would be taken away as she had left them with a man. The next afternoon she took the victim to the hospital. There the police were called and a sheriff's deputy escorted them to the BEAR (Bridging Evidence Assessment and Resources) clinic for a sexual assault exam.

A physician's assistant conducted the forensic exam of the victim. The victim had a bruise on her cheek. Her genital exam appeared normal but it was hard to visualize the shape of the hymen because she was squirming. There were lacerations in the rectal area that were consistent with sexual assault. The physician's assistant collected swabs from inside the victim's mouth, her vulva, two from the vestibule (immediately beyond the labia majora and below the labia minora), and two from the anal area. She also collected the underwear the victim was wearing.

A criminalist analyzed the swabs and cuttings from both pairs of the victim's underwear (worn the day of the incident and the day of the exam). There was no evidence of acid phosphatase, an enzyme in high concentration in semen, on any of the samples. But a small amount of sperm was found on the vulva swab, both vestibule swabs, and one anal swab. The DNA profile of the sperm on the vestibule swabs was consistent with defendant's profile. The sperm found on the cuttings from the underwear the victim wore the day of the incident was also consistent with defendant's profile. The criminalist could not develop a full DNA profile for the sperm on the anal swab.

Dr. Angela Vickers, a pediatrician specializing in child abuse and neglect, testified as an expert. She testified there are usually no injuries to a child when the penetration does not enter the vaginal canal. Most sexually abused children have normal exams. She explained, "When children are sexually abused and describe in their — you know, simple words, developmentally appropriate, that something touched their genitals, whether it was a penis or a finger, even if they are to describe it, it may not go all the way into the vaginal canal. It may actually be within the labia minora or perhaps just touching up against the hymen, and none of those structures would really be injured significantly by pushing up against or touching." She also explained that young children are poor historians and do not distinguish between genitals and anus but use one word for "everything down in that area."

Dr. Vickers found the anal lacerations, which were fresh, having been made within a few days, were consistent with penile penetration. The vestibule swabs with sperm were indicative of penile penetration.

*People v. Barrientos*, No. C087480, 2019 Cal. App. Unpub. LEXIS 6235, at *1-6 (Sept. 19, 2019); ECF No. 1-1 at 3-6; ECF No. 12-8 at 2-5.

3

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S.34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id*. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision meets the criteria set forth in § 2254(d), a reviewing court must then conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1)

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, the court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 293 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 99-100.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

6

**III.     Analysis**

   A.     Habeas Relief Under *Napue*

The Supreme Court's decision in *Napue v. Illinois* holds that "a conviction obtained through use of false evidence, known to be such by representatives of the State" violates a defendants' rights under the Fourteenth Amendment. 360 U.S. 264, 269 (1959). The Constitution is also violated where "the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*. To prevail on a *Napue* claim, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). "In assessing materiality under *Napue*, we determine whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury; if so, then the conviction must be set aside. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (citation and internal quotation marks omitted). "Under this materiality standard, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. Mere inconsistencies in testimony are insufficient to establish either that the testimony was false or that the prosecutor knowingly used false testimony. *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997).

   B.     Petitioner's *Napue* Claim PM III+

      1.     Petitioner's Arguments

Petitioner's claim PM III+ is that the prosecutor knowingly presented false testimony from an expert witness (Vickers). As discussed below, Vickers presented opinion testimony which petitioner disputes. Petitioner contends that Vickers had not reviewed the victim's medical history. He claims the medical history would have shown that lacerations in the victim's rectal area were caused by the victim scratching an ongoing infection in her anus, rather than the lacerations being caused by sexual assault. ECF No. 41 at 2-4; *see* ECF No. 43 at 8-9. He also cites Vickers's testimony regarding injuries generally sustained by victims of sexual abuse, that "victims of sexual abuse normally don't have injuries to the genital area or anus[.]" ECF No. 43

at 5 (citing ECF No. 41 at 2-10); *id*. at 9.  Petitioner appears to be arguing that Vickers's testimony was inconsistent insofar as he claims she testified that victims of sexual abuse normally do not have any injuries to the genital or anal areas, yet the victim in this case did have unhealed lacerations near her anus which petitioner posits were caused by scratching an infection.  ECF No. 41 at 2; ECF No. 52 at 10.

Petitioner maintains that the jury relied on Vickers's "false testimony" as shown by the jury's questions about that testimony.  ECF No. 41 at 4.  The jury had three successive questions which they relayed to the court.  The first question asked to "'read back' her expert conclusion on sexual assault. All testimony."  ECF No. No. 13-10 at 982.  The second question asked for "Vickers testimony question – penetration review explanation vestibule – drawing."  *Id*. at 982.  The third question was for "Angela Vickers – witness copy of last read testimony own copy."  *Id*. at 983.  Counsel agreed to allow the jurors to have Vickers's testimony read to them.  *Id*.  The trial court accordingly informed the jury on the seventh day of trial that "[t]he reporter is available to read back all or a portion of Dr. Vicker's [sic] testimony.  The transcript itself is not to be provided."  *Id*. at 984.  "The court reporter went into the jury deliberation room to read back requested testimony."  *Id*.

Petitioner argues Vickers's testimony was material, because "there is a reasonable probability the result would have been different without the false evidence" and the uncorrected testimony inflamed the minds of the jury.  ECF No. 41 at 6 (citing *In re Richards*); ECF No. 52 at 5-7.  Petitioner further argues that Vickers's testimony was prejudicial and deprived him of a fair trial.  ECF No. 41 at 7-10.

Respondent maintains that petitioner's *Napue* argument is "frivolous under any standard" because Vickers disclosed the basis for her expert opinion, comprising general knowledge and case-specific knowledge that included the genital and rectal examination conducted by a physician's assistant (Joses).  ECF No. 48 at 3; *see* ECF No. 13-10 at 254.

////

////

////

2. <u>State Court Review of Vickers's Testimony</u>

The California Court of Appeal rejected petitioner's arguments regarding Vickers's testimony. The state court addressed five distinct arguments about the testimony: (1) that Vickers was biased; and as to evidence of (2) genital injury; (3) the presence of sperm; (4) sodomy; and (5) the victim's description of what had happened:

> The jury heard that sperm, matching defendant's DNA profile, was found on the vulva swab and both vestibule swabs from the victim, as well as on her underwear. The vestibule is located behind the labia majora, indicating the sufficient penetration. Dr. Vickers, the expert, opined this presence of sperm was consistent with penile penetration. Although there was no evidence of any <u>injury to the victim's genitalia</u>, Vickers testified there is usually no injury if the penetration is not in the vaginal canal. In fact, she testified, the majority of sexually abused children have no physical findings of injury and their injuries heal quickly. Defendant contends an inference of genital penetration is not reasonable because the victim did not report any contact with her genitalia. Vickers explained that young children do not distinguish between their genitalia and anus, often using the same word to describe both. This was substantial evidence of sexual intercourse.
>
> Defendant attacks Vickers's testimony as <u>biased</u>. Whether her testimony was credible was a decision for the jury. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth of falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues no evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal. 4th 342, 403.)
>
> Defendant's contention that the <u>sperm</u> may have been transferred from the mother to the victim is only speculation. The jury heard no evidence on the likelihood of transfer. Although there was some evidence that the mother had sex with defendant on a sofa one to two days before the locked door incident, there was no evidence that any sperm was left on the sofa or as to how it possibly could have been transferred to the victim's underwear and genitalia.
>
> There was also substantial evidence of <u>sodomy</u>. The victim was two and had sperm in her anus. While the source of the sperm on the anal swab could not be identified, the reasonable inference is that its source was the same as the other sperm found on the victim and her underwear. Further, the victim had lacerations in the rectal area that were consistent with sexual assault and penile penetration. The lacerations were made within a few days of the examination.
>
> Defendant points out that <u>the victim described assault</u> by only a finger and contends "It is not reasonable to assume that what she was describing as a finger was in fact his penis . . . ." We disagree. First, there was no evidence the young victim knew what a penis was. Further, the lack of precision by a very young child in describing events during a sexual assault is understandable and was confirmed by the expert testimony. Finally, the nature of the act of molestation was a question for the jury and substantial evidence supports the jury's conclusion that it was sodomy.

9

*People v. Barrientos*, 2019 Cal. App. Unpub. LEXIS 6235, at *8-10; ECF No. 1-1 at 8-9 [emphasis added].

### 3. Petitioner's *Napue* Claim Fails

The primary aspect of Vickers's testimony that petitioner challenges as "false" relates to the evidence of sodomy. The California Court of Appeal determined that there was substantial evidence of sodomy, including the presence of sperm and of recently-created lacerations near the victim's anus. Vickers testified that the lacerations were consistent with sexual assault and penile penetration, but petitioner speculates that the lacerations might have been caused by the victim scratching herself.

Petitioner fails to meet his burden to show that Vickers's testimony regarding the anal lacerations was actually false. Findings of false testimony are typically based on lies made by fact witnesses. *Gimenez v. Ochoa*, 821 F.3d 1136, 1142-1143 (9th Cir. 2016). Expert witnesses may disagree and their disagreement does not mean that one of the experts testified falsely. *Id.*; *United States v. Workinger*, 90 F.3d 1409, 1416 (9th Cir. 1996). Petitioner here merely presents his own disagreement with Vickers, and not any battle between experts. Vickers testified that the anal lacerations were "consistent with sexual assault and penile penetration." Petitioner does not show that a possible alternative cause for the anal lacerations would have had any effect on Vickers's "consistent with" opinion, let alone establish that her testimony was false. *See Hoover v. Newland*, 307 F. App'x 56, 58 (9th Cir. 2009) (argument that an expert "would have testified differently if presented with [] additional evidence" does not establish that the testimony was false).

Petitioner also seems to suggest a different argument regarding Vickers's testimony about an absence of injuries to the victim's genitalia. This argument is vaguely stated and unclear, but seems to imply that if victims usually do not present with genital injury, then this victim's anal injuries are not evidence of sexual assault and thus Vickers's testimony was false regarding one topic or the other. Vickers's testimony made a clear distinction between the condition of the genitalia (evidence of sperm but not of physical injury) and of the anus (evidence of sperm and of

physical injury). These are two separate topics. Vickers's testimony about one does not mean her testimony about the other is inconsistent, let alone false.

Petitioner argues his claim PM III+ is very similar to the habeas claim that was granted by the California Supreme Court in *In re Figueroa* (2018) 4 Cal. 5th 576, 229 Cal. Rptr. 3d 673, 412 P.3d 356. ECF No. 41 at 3. The comparison to *Figueroa* is unconvincing. Medical experts in *Figueroa* had testified at trial that injuries suffered by a 21-month-old child were consistent with sexual assault. In the habeas proceedings: (1) several medical experts who had not testified at trial provided declarations in support of the habeas petition, in which they described in detail the defects in the testimony of the trial witnesses; and (2) medical experts who had testified at trial also provided declarations recanting their own testimony. *Id*. at 581-586, 229 Cal. Rptr. 3d at 678-681, 412 P.3d at 360-363. The state court in *Figueroa* examined the expert witnesses' testimony according to the standard for false expert witness testimony set forth in California Penal Code § 1473, rather than the *Napue* framework. Before being amended in 2023,[4] § 1473 allowed for habeas relief because of false evidence that included "opinions that have either been repudiated by the expert who originally gave them or that have been undermined by later scientific research or technological advances." *Figueroa*, 4 Cal. 5th at 588, 229 Cal. Rptr. at 683 (citation and internal quotation marks omitted); *see also In re Parks* (2021) 67 Cal. App. 5th 418, 445, 282 Cal. Rptr. 3d 222, 244; *In re Richards* (2016) 63 Cal. 4th 291, 311, 202 Cal. Rptr. 3d 678. Expert witnesses in *Figueroa* did repudiate their testimony and the state court concluded that the "concession and repudiations lead overwhelmingly to the conclusion false evidence was introduced at petitioner's trial." *Figueroa*, 4 Cal. 5th at 588, 229 Cal. Rptr. 3d at 683, 412 P.3d at 365. This court does not opine whether repudiation and/or later scientific research or technological advances would establish falsity under *Napue*, because neither has been shown to have occurred here.

Petitioner here has shown no reason to conclude that Vickers's testimony about the victim's anal lacerations was false according to the constitutional standard set forth in *Napue*.

---

[4] Section 1473 was amended effective January 1, 2023, and petitioner makes a separate argument about amended § 1473 that the court addresses *infra*.

Because petitioner has not shown that Vickers's testimony was false, the court does not reach questions of the jury's reliance on her testimony, or the materiality of the testimony. Petitioner has not shown that the decision of the California Court of Appeal was contrary to the clearly established federal law standard set forth in *Napue*. Accordingly, petitioner is not entitled to federal habeas relief on his *Napue* claim.

C. Senate Bill 467 Amending California Penal Code § 1473

Petitioner cites to Senate Bill No. 467, which amended § 1473 of the California Penal Code effective January 1, 2023. ECF No. 52 at 12-13. His argument here focuses on a different aspect of Vickers's testimony, which is the presence and source of sperm on the child victim. Petitioner maintains that the child might have picked up sperm from sitting on a couch where adults had previously had sex.

The amended state statute expands the reasons an expert witness's testimony may be challenged in a petition for writ of habeas corpus, based on disputes that have "emerged or further developed in petitioner's favor regarding expert testimony that was introduced at trial, and which more likely than not affected the outcome of the case." *Baptiste v. Mattison*, No. 2:23-cv-09280-RGK (DTB), 2024 U.S. Dist. LEXIS 56510, at *6, 2024 WL 1288260, at *3 (C.D. Cal. Feb. 6, 2024) (citing Cal. Penal Code § 1473(b)(4)). Petitioner states his amended § 1473 argument in vague and essentially hypothetical terms: "For example, there's scientific study's that have shown that sperm can easily be transfer from one place to another if you sit in the couch or bed and semen was left there and not cleaned, if someone else sits in the same place semen can be transfer from fabrics to clothes." ECF No. 52 at 13. According to petitioner, "a significant dispute can be established by credible expert testimony or declaration, or by peer reviewed literature showing that experts in the relevant medical, scientific, or forensic community, substantial in number of expertise, have concluded that developments have occurred" that undermine an expert witness's testimony. *Id*. at 13-14.

The California Supreme Court had no opportunity to consider petitioner's argument based on amended § 1473 because it denied petitioner's request for habeas relief more than two years before § 1473 was amended. ECF No. 13-10 at 1. And indeed, the amendment to § 1473 became

12

effective more than a year after the federal limitations period for petitioner's federal habeas petition expired on June 24, 2021. *See* ECF No. 43 at 6. Unlike the petitioner in *Baptiste*,[5] petitioner here did not raise – and he could not have raised – his argument about amended § 1473 in his state court habeas petition.

Petitioner's argument appears to sufficiently relate back to the common core of operative facts in his PM III+ claim to allow amendment of his federal habeas petition under Rule 15(c)(1).[6] *See Mayle v. Felix*, 545 U.S. 644, 650, 664 (2005). However, amendment would be futile because petitioner's argument fails to articulate an actual, justiciable case or controversy. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) ("Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional case or controversy, that the issues presented are definite and concrete, not hypothetical or abstract." (citation and internal quotation marks omitted)). Petitioner states his argument about amended § 1473 in an essentially hypothetical and abstract manner. Petitioner has not identified any actual scientific studies that would actually undermine Vickers's expert opinion regarding the semen and he has not shown that any actual dispute has emerged or further developed in his favor regarding Vickers's expert testimony. His argument about amended § 1473 therefore fails to present a "case or controversy" within the meaning of Article III of the Constitution. Accordingly, if and to the extent petitioner's argument about amended § 1473 is construed as a motion to amend his federal habeas petition, the court must not allow petitioner to add this abstract and hypothetical argument to his petition.

---

[5] The petitioner in *Baptiste* had unsuccessfully raised his amended § 1473 expert witness testimony issue in a habeas petition to the California Court of Appeal. 2024 WL 1288260, at *2. The federal district court in *Baptiste* declined to re-examine the petitioner's § 1473 expert testimony issue because of the deference owed to the state court's determination of state law. *Id.* at 3.

[6] There is a line of cases that analyze the limits of retroactive effects of newly-articulated Constitutional standards. *See In re Gomez* (2009) 45 Cal. 4th 650, 88 Cal. Rptr. 3d 177, 199 P.3d 574; *Teague v. Lane*, 489 U.S. 288 (1989). These cases are inapplicable because the explicit language of the January 1, 2023 amendment to § 1473 provides for a category of habeas relief based on events that may occur <u>after</u> trial and conviction – namely, subsequent scientific studies that have a sort of retroactive effect of undermining an expert witness's trial testimony.

### IV. **Recommendation**

For the reasons stated above, it is hereby RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: September 18, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14